Case No. 10-56068

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT
_____

BEVERLY HOLLIS-ARRINGTON & CRYSTAL LIGHTFOOT,

*Plaintiffs-Appellants*,

v.

CENDANT MORTGAGE CORPORATION et al.,

*Defendants-Appellees.*

_____

Appeal from the United States District Court
for the Central District of California
Case No. 02-6568

_____

## DEFENDANT-APPELLEE FANNIE MAE'S RESPONSE BRIEF
_____

JAN T. CHILTON                    JONATHAN D. HACKER
SEVERSON & WERSON                 MICHAEL WALSH
One Embarcadero Center            O'MELVENY & MYERS LLP
26th Floor                        1625 Eye Street, N.W.
San Francisco, CA 94111           Washington, D.C. 20006
(415) 398-3344                    (202) 383-5285
(415) 956-0439 (fax)              (202) 383-5414 (fax)

*Attorneys for Defendant-Appellee Fannie Mae*

## CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, defendant Federal National Mortgage Association states that it is a publicly traded corporation chartered by the U.S. Congress.  It is under the conservatorship of the Federal Housing Finance Agency pursuant to 12 U.S.C. § 4617(a)(1)-(2).  It has no parent company, subsidiary, or affiliate which has outstanding securities in the hands of the public, and no publicly held corporation owns in excess of ten percent of its outstanding stock.

# TABLE OF CONTENTS

**Page**

INTRODUCTION ....................................................................................1

JURISDICTIONAL STATEMENT ........................................................3

STATEMENT OF THE ISSUES PRESENTED.....................................4

STATEMENT OF THE CASE.................................................................4

        A.     Background on Fannie Mae ......................................5

        B.     Factual Background ..................................................8

        C.     Related Actions ......................................................10

        D.     Proceedings Below.................................................12

SUMMARY OF ARGUMENT ..............................................................16

STANDARD OF REVIEW ...................................................................18

ARGUMENT .........................................................................................19

    I.     THE DISTRICT COURT CORRECTLY HELD THAT
          THE "SUE AND BE SUED" PROVISION IN FANNIE
          MAE'S CHARTER CONFERS FEDERAL SUBJECT
          MATTER JURISDICTION .................................................19

        A.     The Supreme Court's Decision In *American
             National Red Cross* Requires Federal
             Jurisdiction In This Case.........................................19

        B.     The History Of Fannie Mae's Charter Makes
             Clear That Congress Intended To Authorize
             Federal Subject Matter Jurisdiction Over Claims
             Against Fannie Mae ................................................28

        C.     The Cases Cited By Plaintiffs Do Not Defeat
             Federal Jurisdiction In This Case............................31

    II.    THIS COURT SHOULD AFFIRM BECAUSE ITS
          PRIOR ORDER SUMMARILY AFFIRMING THE
          DISTRICT COURT'S DECISIONS IN THIS CASE IS
          "LAW OF THE CASE" ......................................................36

i

# TABLE OF CONTENTS
## (continued)

**Page**

III. THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS' CLAIMS ON RES JUDICATA GROUNDS ........................................................................ 37

IV. THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING PLAINTIFFS' RULE 60(b) MOTION ................................................................. 41

    A. The District Court Properly Held That Plaintiffs' Rule 60(b) Motion Was Untimely ........................................... 43

    B. The District Court Did Not Abuse Its Discretion When It Denied Plaintiffs' Rule 60(b) Motion ...................... 45

CONCLUSION ...................................................................... 46

# TABLE OF AUTHORITIES

**Page**

## CASES

*Action Embroidery Corp. v. Atl. Embroidery, Inc.*,
   368 F.3d 1174 (9th Cir. 2004) ........................................................... 25

*Am. Nat'l Red Cross v. S.G.*,
   505 U.S. 247 (1992) ................................................................ passim

*Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation*,
   605 F.2d 648 (2d Cir. 1979) ............................................................ 44

*Bank of U.S. v. Deveaux*,
   9 U.S. (5 Cranch) 61 (1809) ...................................................... 20, 21

*Bankers Trust Co. v. Tex. & Pac. Ry. Co.*,
   241 U.S. 295 (1916) ...................................................................... 23

*Blackmar v. Guerre*,
   342 U.S. 512 (1952) ...................................................................... 24

*Breuer v. Jim's Concrete of Brevard, Inc.*,
   538 U.S. 691 (2003) ...................................................................... 24

*Califano v. Sanders*,
   430 U.S. 99 (1977) .................................................................. 31, 32

*Casey v. Albertson's Inc.*,
   362 F.3d 1254 (9th Cir. 2004) ........................................................ 42

*Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*,
   833 F.2d 208 (9th Cir. 1987) .......................................................... 42

*De Saracho v. Custom Food Mach., Inc.*,
   206 F.3d 874 (9th Cir. 2000) .......................................................... 42

*Doe v. Mann*,
   415 F.3d 1038 (9th Cir. 2005) ........................................................ 33

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Drake v. Whaley*,
355 F. App'x 315 (11th Cir. 2009) ................................................25

*Ferguson v. Union Nat'l Bank*,
126 F.2d 753 (4th Cir. 1942) ...................................... 26, 30

*George H. Evans & Co. v. United States*,
169 F.2d 500 (3d Cir. 1948) ...........................................30

*Hall v. City of L.A.*,
697 F.3d 1059 (9th Cir. 2012) ........................................36

*Hegler v. Borg*,
50 F.3d 1472 (9th Cir. 1995) ..........................................36

*Hells Canyon Pres. Council v. U.S. Forest Serv.*,
403 F.3d 683 (9th Cir. 2005) ..........................................39

*Hollis-Arrington v. Cendant Mortg. Corp.*,
61 F. App'x 462 (9th Cir. 2003) ......................................11

*Hollis-Arrington v. PHH Mortg. Corp.*,
2005 WL 3077853 (D.N.J. Nov. 15, 2005) ......................... 10, 11, 12

*Hollis-Arrington v. PHH Mortg. Corp.*,
205 F. App'x 48 (3d Cir. 2006) .......................................12

*Infuturia Global Ltd. v. Sequus Pharm., Inc.*,
631 F.3d 1133 (9th Cir. 2011) ........................................18

*Irwin v. Mascott*,
370 F.3d 924 (9th Cir. 2004) ..........................................40

*K.V. Mart Co. v. United Food & Commercial Workers Int'l Union*,
173 F.3d 1221 (9th Cir. 1999) ........................................33

*Kimel v. Fla. Bd. of Regents*,
528 U.S. 62 (2000) ......................................................24

## TABLE OF AUTHORITIES
### (continued)

**Page**

*Knuckles v. RBMG, Inc.*,
481 F. Supp. 2d 559 (S.D. W. Va. 2007)............................................................34

*Lemoge v. United States*,
587 F.3d 1188 (9th Cir. 2009) ............................................................43

*Martinez-Serrano v. INS*,
94 F.3d 1256 (9th Cir. 1996) ............................................................45

*McKnight v. Neven*,
366 F. App'x 841 (9th Cir. 2010) ............................................................41

*Merritt v. Mackey*,
932 F.2d 1317 (9th Cir. 1991) ............................................................36

*Osborn v. President, Dirs. & Co. of Bank*,
22 U.S. (9 Wheat.) 738 (1824) ............................................................ 21, 24

*Owens v. Kaiser Found. Health Plan, Inc.*,
244 F.3d 708 (9th Cir. 2001) ............................................................38

*Pac. & Arctic Ry. & Navigation Co. v. United Transp. Union*,
952 F.2d 1144 (9th Cir. 1991) ............................................................42

*Pennoyer v. Neff*,
95 U.S. 714 (1878)............................................................ 25, 26

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Raines*,
534 F.3d 779 (D.C. Cir. 2008)............................................................ passim

*Portsmouth Redevelopment & Hous. Auth. v. Pierce*,
706 F.2d 471 (4th Cir. 1983) ............................................................27

*Rincon del Sol v. Lloyd's of London*,
709 F. Supp. 2d 517 (S.D. Tex. 2010)............................................................ 34, 35

*S. Windsor Convalescent Home, Inc. v. Mathews*,
541 F.2d 910 (2d Cir. 1976) ............................................................26

v

# TABLE OF AUTHORITIES
## (continued)

**Page**

*SEC v. Coldicutt*,
   258 F.3d 939 (9th Cir. 2001) ...............................................................18

*SEC v. Worthen*,
   98 F.3d 480 (9th Cir. 1996) .................................................................18

*Seven Oaks, Inc. v. Fed. Hous. Admin.*,
   171 F.2d 947 (4th Cir. 1948) ...............................................................29

*Stewart v. U.S. Bancorp*,
   297 F.3d 953 (9th Cir. 2002) ........................................................ 18, 40

*SunCoke Energy Inc. v. MAN Ferrostaal Aktiengesellschaft*,
   563 F.3d 211 (6th Cir. 2009) ...............................................................25

*Trevino v. Gates*,
   99 F.3d 911 (9th Cir. 1996) .................................................................40

*Turtle Island Restoration Network v. U.S. Dep't of State*,
   673 F.3d 914 (9th Cir. 2012) ...............................................................38

*United States v. Liquidators of European Fed. Credit Bank*,
   630 F.3d 1139 (9th Cir. 2011) .............................................................38

*United States v. Morton*,
   467 U.S. 822 (1984).................................................................... 25, 26

*United States v. Schimmels*,
   127 F.3d 875 (9th Cir. 1997) ...............................................................40

*W. Radio Servs. Co. v. Glickman*,
   123 F.3d 1189 (9th Cir. 1997) .............................................................38

*Wachovia Bank, N.A. v. Schmidt*,
   546 U.S. 303 (2006).............................................................................25

*Warren v. Garvin*,
   219 F.3d 111 (2d Cir. 2000) ................................................................41

vi

# TABLE OF AUTHORITIES
## (continued)

**Page**

## STATUTES

5 U.S.C. § 702 ..................................................................................31

5 U.S.C. § 703 ..................................................................................31

12 U.S.C. § 1716 ...............................................................................5

12 U.S.C. § 1717 ...............................................................................5

12 U.S.C. § 1718 ...............................................................................5

12 U.S.C. § 1719 ...............................................................................5

12 U.S.C. § 1723a ..............................................................................7

12 U.S.C. § 4501 ...............................................................................5

12 U.S.C. § 4562 ...............................................................................7

12 U.S.C. § 4563 ...............................................................................7

12 U.S.C. § 4564 ...............................................................................7

25 U.S.C. § 1914 ..............................................................................33

Federal Housing Enterprises Financial Safety and Soundness Act of
    1992, Pub. L. No. 102-550, 106 Stat. 3941 ...................................... 6, 7

Housing Act of 1954, Pub. L. No. 83-560, 68 Stat. 590 ............................. 6, 29, 30

Housing and Economic Recovery Act of 2008, Pub. L. No. 110-289,
    122 Stat. 2654 ............................................................................... 7, 8

Housing and Urban Development Act of 1968, Pub. L. No. 90-448, 82
    Stat. 476 .........................................................................................6

National Housing Act, Pub. L. No. 73-479, 48 Stat. 1246 (1934) ......................5, 28

vii

# TABLE OF AUTHORITIES
## (continued)

**Page**

National Housing Act Amendments of 1938, Pub. L. No. 75-424, 52
    Stat. 8 ...............................................................................................5

## RULES

Fed. R. Civ. P. 60 ............................................................... 41, 43

## REGULATIONS

12 C.F.R. § 1770.1 ................................................................7

12 C.F.R. § 1777.1 ................................................................7

2012-2014 Enterprise Housing Goals, 77 Fed. Reg. 67,535 (2012) ........7

Corporate Governance, 70 Fed. Reg. 17,303 (Apr. 6, 2005)....................6

## OTHER AUTHORITIES

12 James Wm. Moore et al., Moore's Federal Practice § 60.65[2][a]
    (3d ed. 1997) ...............................................................42

Br. for Pet'r, *Am. Nat'l Red Cross v. S.G.* 1992 U.S. S. Ct. Briefs
    LEXIS 220 ...............................................................27

Br. for United States as Amicus Curiae Supporting Pet'r, *Am. Nat'l
Red Cross v. S.G.*, 1992 U.S. S. Ct. Briefs LEXIS 115 ....................22

Federal Practice & Procedure § 2866 ....................................44

S. Rep. No. 102-282 (1992) ..............................................5

## INTRODUCTION

This appeal arises from the third of five different lawsuits filed in federal and state courts around the country, all involving the same core set of facts and raising essentially the same allegations.  In August 1999, plaintiff Beverly Hollis-Arrington took out a loan from Cendant Mortgage Corporation ("Cendant") secured by a deed of trust on property she owned in West Hills, California.  The loan was subsequently sold to Federal National Mortgage Association ("Fannie Mae").  Hollis-Arrington missed her first payment on the loan in October 1999, and subsequently failed to make any payments at all.  The property was eventually foreclosed and re-sold.  In a series of lawsuits, Hollis-Arrington has alleged that this foreclosure was improper, either because Cendant, which remained the servicer on the loan, breached its agreement to grant her a forbearance or because the loan itself was part of an illegal conspiracy to encourage non-creditworthy African-Americans to take out loans that they would not be able to repay.  All of Hollis-Arrington's other lawsuits have been dismissed.  This one should be too.

Hollis-Arrington (along with her daughter) filed this action against Cendant, Fannie Mae, and Attorneys Equity (the trustee for the property) in California state court after a complaint raising essentially the same allegations was dismissed in California federal district court.  Defendants removed to federal court, which dismissed the complaint on res judicata grounds and denied plaintiffs' Rule 60(b)

motion to set aside the judgment. This Court affirmed the district court's decisions in late 2003. Because the complaint was not dismissed as to Attorneys Equity, however, the case technically remained open, and in 2010, plaintiffs filed yet another Rule 60(b) motion and a new appeal to this Court. This Court initially affirmed, but then vacated its order, appointed counsel for plaintiffs, and directed that the parties file new briefs that, in addition to any other issues, addressed whether the case was properly removed to federal court.

Removal to federal court was plainly proper because Fannie Mae's federal charter provides that it can "sue or be sued . . . in any court of competent jurisdiction, State or Federal." As the U.S. Supreme Court held in *American National Red Cross v. S.G.*, 505 U.S. 247 (1992), "sue or be sued" provisions that expressly mention the federal courts establish independent federal subject matter jurisdiction. That rule applies to cases involving Fannie Mae, as the D.C. Circuit held in *Pirelli Armstrong Tire Corp. Retiree Medical Benefits Trust v. Raines*, 534 F.3d 779 (D.C. Cir. 2008).

Plaintiffs' contrary argument is that the district court was not a "court of competent jurisdiction" as to their action against Fannie Mae, and thus the charter's "sue or be sued" provision did not confer federal jurisdiction over the action. In fact, the Supreme Court has previously held that statutory provisions authorizing suit in "any Federal or State court *of competent jurisdiction*" suffice,

2

without more, to authorize suit in federal district courts, and the phrase "of competent jurisdiction" in the Fannie Mae charter serves multiple functions that have nothing to do with restricting the scope of federal jurisdiction over suits by and against Fannie Mae.

Having properly assumed jurisdiction, the district court also properly dismissed plaintiffs' claims on res judicata grounds because Hollis-Arrington had previously brought essentially the same suit, and that suit was dismissed on the merits. Indeed, this Court affirmed the district court's previous dismissal on res judicata grounds. The district court also properly exercised its discretion when it denied plaintiffs' Rule 60(b) motion to set aside the judgment. As an initial matter, plaintiffs' motion was untimely because they waited over *seven years* to file it. It also fails on the merits because all of the "newly discovered evidence" they cite was, in fact, not newly discovered at all—it was available and cited in the Rule 60(b) motion they previously filed in 2004—and it would not have changed the outcome in the case in any event.

The decisions of the district court should be affirmed.

## JURISDICTIONAL STATEMENT

The district court had subject-matter jurisdiction pursuant to 12 U.S.C. § 1723a(a), which provides that Fannie Mae may be "sued . . . in any court of competent jurisdiction, State or Federal."

This Court has jurisdiction under 28 U.S.C. § 1291 because the appeal is from a final judgment entered by the district court on June 11, 2010. Plaintiffs filed their notice of appeal on July 6, 2010.

## STATEMENT OF THE ISSUES PRESENTED

1.  Whether removal is proper where the defendant's federal charter authorizes it to "sue and be sued, and to complain and defend, in any court of competent jurisdiction, State or Federal."

2.  Whether this Court's prior order summarily affirming the district court's motion to dismiss and its denial of plaintiffs' Rule 60(b) motion is "law of the case."

3.  Whether the district court properly dismissed plaintiffs' complaint on res judicata grounds, where one of the plaintiffs previously filed a suit raising the same claims against almost the exact same parties and it was dismissed on the merits.

4.  Whether the district court properly exercised its discretion in denying plaintiffs' Rule 60(b) motion, where plaintiffs waited roughly seven years after their case was dismissed to file their motion and did not offer newly discovered evidence that was likely to have changed the outcome.

## STATEMENT OF THE CASE

Plaintiff Beverly Hollis-Arrington was the owner of real property that was foreclosed upon and subsequently re-sold after she failed to make required loan

4

payments. She has filed a number of suits in both federal and state court related to the foreclosure of the property. In this case, she and her daughter (to whom she at one point deeded her home) allege, among other things, that defendants conspired to make loans to non-creditworthy African-Americans to induce default and allow Fannie Mae to foreclose on the property. Plaintiffs seek damages and declaratory relief.

### A.     Background on Fannie Mae

Originally established in 1938 in response to the Great Depression, Fannie Mae was created to fulfill an "important public mission[]," 12 U.S.C. § 4501(1), *viz.*, promoting a vibrant secondary mortgage market and making home ownership more accessible for low and middle-income Americans. National Housing Act Amendments of 1938, Pub. L. No. 75-424, 52 Stat. 8, 23 (1938); 12 U.S.C. §§ 1716-1719; *see* S. Rep. No. 102-282, at 9 (1992) (stating that Fannie Mae was "legislatively chartered for public purposes"). Because this mission was a critical component of federal housing policy, Fannie Mae was constituted as a governmental entity and organized under federal law. 12 U.S.C. § 1716. Its original charter provided that it could "sue and be sued, complain and defend, in any court of law or equity, State or Federal." National Housing Act, Pub. L. No. 73-479, § 301(c)(3), 48 Stat. 1246, 1253 (1934).

In 1954, with the enactment of the Housing Act of 1954, Fannie Mae was converted to a "mixed-ownership corporation," and the "sue-and-be-sued" provision in its charter was amended to provide that it could "sue and be sued, and to complain and defend, in any court of competent jurisdiction, State or Federal." Housing Act of 1954, Pub. L. No. 83-560, § 309(a), tit. II, 68 Stat. 590, 621-22 (1954).  Notwithstanding these changes to its structure (and others that followed[1]), its fundamental purpose remained the same:  to effectuate federal housing policy by making home ownership more accessible to low and middle-income Americans. *See* S. Rep. No. 102-282, at 25 (noting "the Congressional design in chartering the enterprises as privately owned and managed entities with special, public purposes"); *id.* at 34 (recognizing Fannie Mae's "special relationship with the federal government"); Corporate Governance, 70 Fed. Reg. 17,303, 17,309 (Apr. 6, 2005) (acknowledging Fannie Mae's "unique mission").

Because Fannie Mae is tasked with effectuating federal policies and achieving federal goals, Congress has ensured that Fannie Mae's structure and operations remain subject to federal oversight.  When this case was removed to federal court, Fannie Mae was required, among other things, to submit annual

---

[1] In 1968, Fannie Mae was established as a private shareholder owned corporation, Housing and Urban Development Act of 1968, Pub. L. No. 90-448, § 802(z)-(ee), 82 Stat. 476, 541 (1968), although it remained heavily regulated by the federal government, *see, e.g.*, Federal Housing Enterprises Financial Safety and Soundness Act of 1992, Pub. L. No. 102-550, 106 Stat. 3941 (establishing the OFHEO as Fannie Mae's primary regulator).

reports to both houses of Congress and various federal agencies and offices. 12 U.S.C. § 1723a(d)(3)(A), 1723a(j), 1723a(m)(n). Fannie Mae was also required to meet annual housing goals established by the U.S. Secretary for Housing and Urban Development. *See* 12 U.S.C. §§ 4562-64. And Fannie Mae's prior regulator, the Office of Federal Housing Enterprise Oversight ("OFHEO"), enacted numerous federal regulations pursuant to the Federal Housing Enterprises Financial Safety and Soundness Act of 1992, Pub. L. No. 102-550, 106 Stat. 3941, covering a number of topics from executive compensation to Fannie Mae's capitalization, *see* 12 C.F.R. § 1770.1 (executive compensation); *id.* § 1777.1 (capitalization). Congress expanded the federal government's oversight of Fannie Mae when it passed the Housing and Economic Recovery Act of 2008 ("HERA"), Pub. L. No. 110-289, 122 Stat. 2654 (2008), which among other things, established the Federal Housing Finance Agency ("FHFA") as Fannie Mae's regulator and provided FHFA's Director with the authority to place Fannie Mae into conservatorship or receivership. 122 Stat. at 2662, 2734. FHFA's Director exercised that authority on September 6, 2008 and placed Fannie Mae into conservatorship. Since then, FHFA has enacted a number of regulations similar to those that were in place prior to the conservatorship. For example, Fannie Mae is still required to meet annual housing goals established by its conservator, FHFA. *See* 2012-2014 Enterprise Housing Goals, 77 Fed. Reg. 67,535 (2012). And FHFA

7

is still required to submit annual reports to Congress regarding various aspects of Fannie Mae's business and performance. *See* 122 Stat. at 2745.

### B. Factual Background

In August 1999, Cendant Mortgage Corporation ("Cendant") lent Hollis-Arrington $180,400 secured by a deed of trust on property she owned in West Hills, California. Compl. ¶ 9.[2] Roughly a month later, Cendant sold the loan to Fannie Mae, although it remained the loan's servicer. *Id.* ¶ 10. Fannie Mae subsequently re-sold the loan to Cendant because it failed to meet Fannie Mae's credit standards.

In October 1999, the first monthly payment on the loan was due. Hollis-Arrington failed to make that payment, or any subsequent payment. *Id.* ¶ 12. She asked Cendant for, and was provided, information about programs to cure the default. Hollis-Arrington sought to enter into a forbearance agreement, and alleges that Cendant led her to believe that a forbearance agreement had been approved. *Id.* ¶ 15. Cendant ultimately rejected the application and initiated foreclosure proceedings.

In May 2000, to prevent foreclosure, Hollis-Arrington filed a bankruptcy petition. That petition was dismissed the next month for failure to pay the required filing fees. *See* DE 31-33, No. 00-bk-14478-GM (Bankr. C.D. Cal. 2000). In July

---

[2] All citations to "Compl." or "DE" (without a corresponding case number) refer to the underlying action giving rise to this appeal.

2000, she filed a second bankruptcy petition, which was again dismissed for failing to pay the required filing fees. This time, the court's dismissal order barred Hollis-Arrington from filing another bankruptcy petition for 180 days. *See* DE 27, 28, No. 00-bk-16423-GM (Bankr. C.D. Cal.).

On September 11, 2000, Hollis-Arrington deeded her home to her daughter, Crystal Lightfoot. *See* Compl. Ex. E, No. 03-cv-02416-TPJ (D.D.C. Nov. 21, 2003). Lightfoot filed her own bankruptcy petition. This petition too was dismissed for failure to make the required payments, and the court barred Lightfoot from filing another bankruptcy petition for 180 days. DE 28, 29, No. 00-bk-18360-AG (Bankr. C.D. Cal. 2000).

Cendant scheduled a new foreclosure sale on November 28, 2000, but continued the sale to January 11, 2001, based on Hollis-Arrington's assurance that she was trying to refinance. Although no refinancing ever occurred, the foreclosure was further delayed by court order in the first lawsuit Hollis-Arrington filed in federal district court in October 2000. *See* DE 25, No. 00-cv-11125-CBM-AJW (C.D. Cal. Jan. 10, 2001); *see also infra* at 10-11. On February 5, 2001, four days after the district court lifted the temporary stay it had granted (DE 44, No. 00-cv-11125-CBM-AJW (C.D. Cal. Feb. 1, 2001), Lightfoot filed a second bankruptcy case, which was dismissed the next month. Lightfoot was again barred

from making a new bankruptcy filing for 180 days. DE 30, 31, No. 01-bk-10910-AG (Bankr. C.D. Cal. 2001).

Lightfoot then transferred 50% of the property back to Hollis-Arrington (Compl. ¶ 102, No. 03-cv-02416-TPJ (D.D.C. Nov. 21, 2003)), who filed her third bankruptcy petition on March 22, 2001. Cendant at that point obtained "in rem" relief from the automatic stay in order to proceed with foreclosure, which was scheduled for June 29, 2001. DE 33, No. 01-12579-GM (Bankr. C.D. Cal.). Despite Hollis-Arrington's attempt to seek a stay in her second suit in federal district court, the foreclosure sale was finally held that day. Compl. ¶¶ 61-72, No. 03-cv-02416-TPJ (D.D.C. Nov. 21, 2003). Harold Tennen and Ed Feldman bought the property at the sale and, through state court action, evicted Hollis-Arrington in September 2001. *Id.* ¶¶ 80-81. They subsequently sold the property to Robert O. Matthews. Compl. ¶ 5.

### C.    Related Actions

This appeal arises from the third of at least five suits filed by plaintiffs in connection with the foreclosure of the property. In the first suit, which Hollis-Arrington filed against Cendant in the Central District of California on October 18, 2000, she alleged that Cendant had "fraudulently promised to provide her with a forbearance agreement after she fell delinquent but reneged and foreclosed on the property instead." *Hollis-Arrington v. PHH Mortg. Corp.*, 2005 WL 3077853, at

*2 (D.N.J. Nov. 15, 2005). The district court granted Cendant's motion for summary judgment, DE 102, No. 00-cv-11125-CBM-AJW (C.D. Cal. July 15, 2002), and this Court affirmed, *Hollis-Arrington v. Cendant Mortg. Corp.*, 61 F. App'x 462 (9th Cir. 2003) (mem).

In June 2001, while the first case was pending, Hollis-Arrington filed a second action against Cendant, Fannie Mae, and Attorneys Equity National Corporation. This time, her theory was that "Cendant, in a conspiracy with Fannie Mae, sought to make mortgage loans to non-creditworthy black borrowers for the sole purpose of causing the borrowers to default on the loans and enabling Fannie Mae to foreclose and acquire the real property." DE 162, at 3, No. 01-cv-05658 (C.D. Cal. Aug. 29, 2003). In May 2002, the district court dismissed the case, DE 131, at 7, No. 01-cv-05658 (C.D. Cal. May 28, 2002), and this Court affirmed. *PHH Mortg. Corp.*, 2005 WL 3077853, at *2; *see* DE 28, No. 02-56280 (9th Cir. Apr. 17, 2003).

After the district court dismissed Hollis-Arrington's complaint in the second suit, she (along with her daughter, Crystal Lightfoot) filed this case in Los Angeles Superior Court on July 18, 2002. They sued the same parties as in the second action and made the same allegations of a conspiracy to make loans to non-creditworthy borrowers. *Id.* at 3; *PHH Mortg. Corp.*, 2005 WL 3077853, at *3. The district court granted motions by Cendant and Fannie Mae to dismiss on res

judicata grounds, and this Court affirmed. *See infra* at 12-16 (detailing the full procedural history of this litigation).

Hollis-Arrington subsequently filed a fourth action in federal court in the District of Columbia. *Hollis-Arrington v. PHH Mortg. Corp.*, 205 F. App'x 48, 50 (3d Cir. 2006) (per curiam) (discussing No. 03-cv-02416-TPJ (D.D.C. 2003)). The district court granted defendants' motion to dismiss on res judicata grounds, DE 41, No. 03-cv-02416-TPJ (D.D.C. Feb. 17, 2004), and the D.C. Circuit Court of Appeals affirmed, Order, *Hollis-Arrington v. Fannie Mae*, No. 04-5068, at 2 (D.C. Cir. Nov. 15, 2004).

Finally, plaintiffs filed a fifth suit in federal court in New Jersey. *PHH Mortg. Corp.*, 2005 WL 3077853, at *3. The defendants moved to dismiss on a variety of grounds, including res judicata, and the district court granted the motion. *Id.* at *5-12. The Third Circuit Court of Appeals affirmed. *PHH Mortg. Corp.*, 205 F. App'x at 55; *see id.* at 52 ("res judicata bars suit against . . . Fannie Mae").

### D. Proceedings Below

As noted above, plaintiffs filed this case in Los Angeles Superior Court after the similar complaint Hollis-Arrington had previously filed in federal district court was dismissed. On August 22, 2002, Fannie Mae removed the case to federal district court. On August 26, 2002, plaintiffs filed an application to remand, which was denied on September 5, 2002.

In late August, while the remand briefing was ongoing, defendants Fannie Mae, Cendant, and Matthews filed motions to dismiss. On February 20, 2003, the district court granted Cendant's and Fannie Mae's motion to dismiss, concluding that all three elements of res judicata were satisfied. First, "[p]laintiffs have already prosecuted two prior actions concerning the same loan process and eventual foreclosure of their property. . . . Thus, the same rights and interests are at issue in the instant case as were adjudicated in the previous actions." OER 1:33 (DE 59, at 8).[3] Second, "the requirement that the earlier actions result in a final judgment on the merits is met" because "[u]nder federal law, final judgments have preclusive effect under res judicata regardless of the pendency of appeal." *Id.* at 34 (DE 59, at 9). Third, the parties were so similar that their interests were adequately represented in the original suit. *Id.* at 34-35 (DE 59, at 10). The court also granted defendants' motion on the alternative ground that plaintiffs' claims were barred by collateral estoppel.

On June 4, 2003, plaintiffs filed a motion to set aside the judgment as to all defendants other than Attorneys Equity, and on August 29, 2003, the district court denied the motion. *Id.* at 46 (DE 79, at 1). Although judgment had not been

---

[3] Citations to "OER" refer to the Excerpts of Record filed with plaintiffs' original brief. Because the Excerpts of Record are not consecutively paginated, the cited page number refers to the page in the PDF version of the Excerpts of Record. Thus, the citation "OER 1:33" refers to page 33 of the PDF of the first volume of the Excerpts of Record. The citation to the relevant docket entry is included in parentheses, as well.

entered against Attorneys Equity, plaintiffs filed a notice of appeal, and on December 15, 2003, this Court summarily affirmed.  SER-7-8;[4] *see* OER 1:56 (DE 89).  This case was removed from the district court's active docket and remained dormant until late 2008.

On April 7, 2009, plaintiffs filed a motion in the district court to restore this case to the court's active calendar for the purpose of entering final judgment pursuant to Federal Rule of Civil Procedure 54(b).  On October 21, 2009, the district court entered judgment in favor of Cendant, Fannie Mae, and Matthews, "consistent with" its prior order granting the defendants' motions to dismiss.  On May 27, 2010, the district court ordered plaintiffs to show cause no later than June 10, 2010 why the action should not be dismissed with prejudice as to Attorneys Equity based on the doctrine of res judicata.  On June 11, 2010, the court sua sponte dismissed the claim against Attorneys Equity on res judicata grounds, and entered judgment in favor of Attorneys Equity.  Plaintiffs ultimately filed a reply to the court's show cause order later that day.

That same day, plaintiffs moved to set aside the judgment pursuant to Rule 60(b).  On September 27, 2010, the district court denied plaintiffs' motion to set aside the judgment.  The district court first held that it lacked jurisdiction over the motion because plaintiffs failed to file it within a year after entry of judgment.  The

---

[4] Citations to "SER" refer to the Supplemental Excerpts of Record.

court held that "[a]lthough [it] did not initially enter a judgment on a separate document as required by Federal Rule of Civil Procedure 58(a), Plaintiffs demonstrated their belief that the February 20, 2003 order was a final judgment." OER 1:93 (DE 117, at 7).  "Because the parties treated the order of dismissal as a judgment, the Court finds that, for purposes of Rule 60(b)(3), judgment was entered as to these defendants on July 21, 2003, which was 150 days from the date of entry of the February 20, 2003 order of dismissal."  *Id.*

The court also rejected plaintiffs' motion on the merits, explaining that "[p]laintiffs have failed to present clear and convincing evidence that Defendants' attorneys perpetrated fraud upon the Court, that the judgment was unfairly procured, or that the evidence was not previously available to Plaintiffs.  Indeed, the evidence was clearly discoverable prior to the filing of the Rule 60(b) Motion because the documents are public records and Plaintiffs presented the same facts to the Court more than seven years ago."  *Id.* at 94 (DE 117, at 8).  The court also rejected plaintiffs' request for "'an independent action for the court to set aside the judgment for "fraud upon the court."'"  *Id*. at 95 (DE 117, at 9).  Construing the request as one for relief under Rule 60(b)(6), the court held that there was "no basis for this extraordinary relief.  *Id.*  On September 30, 2010, this Court lifted the stay on the appeal.

Following briefing, this Court issued a memorandum, holding that "[t]he district court did not abuse its discretion by denying plaintiffs' Rule 60(b) motion to set aside the judgment because plaintiffs failed to establish any ground for relief." DE 30, at 2, No. 10-56068 (9th Cir. Jan. 9, 2012). This Court also held that "[t]he district court had removal jurisdiction because state claims filed to circumvent the res judicata impact of a federal judgment may be removed to federal court." *Id.*

On January 20, 2012, plaintiffs petitioned for panel rehearing and rehearing en banc. On April 13, 2012, this Court sua sponte withdrew the memorandum disposition filed on January 9, 2012 and denied as moot plaintiffs' petition for rehearing and rehearing en banc. The Court appointed pro bono counsel for plaintiffs and directed pro bono counsel to file either replacement or supplemental briefing; the Court also provided that defendants could file replacement or supplemental briefs. The Court directed that "[i]n addition to any other issues the parties address in their briefs, they shall address whether the district court had subject matter jurisdiction on the basis of the federal charter of [Fannie Mae]." DE 32, at 2, No. 10-56068 (9th Cir. Apr. 13, 2012).

## SUMMARY OF ARGUMENT

I. The district court properly held that the "sue and be sued" provision in Fannie Mae's charter confers federal subject matter jurisdiction. In *American*

*National Red Cross v. S.G.*, 505 U.S. 247 (1992), the Supreme Court held that where a "sue and be sued" provision in a federal charter explicitly mentions federal courts, that provision establishes independent subject matter jurisdiction in the federal courts. That rule plainly applies here. The only difference between Fannie Mae's charter and the one at issue in *American National Red Cross* is that Fannie Mae's charter authorizes suit in "any court *of competent jurisdiction*, state or federal." That is a distinction without a difference. The Supreme Court has held that similar statutory provisions authorize suit in federal district courts, and that phrase in Fannie Mae's charter serves multiple functions having nothing to do with the scope of federal jurisdiction over suits by and against Fannie Mae, as the history of Fannie Mae's charter confirms.

II. This Court should affirm because its prior order summarily affirming the district court's decisions in this case is "law of the case." This Court's prior order necessarily held that the district court properly dismissed plaintiffs' claims on res judicata grounds, and none of the "new" evidence plaintiffs offered in their Rule 60(b) motion merited a change in result. Those are the precise questions at issue in this appeal.

III. The district court properly held that plaintiffs' claims were barred on res judicata grounds because all three criteria are satisfied here: (1) identity of claims, (2) final judgment on the merits, and (3) identity or privity between the parties.

17

Hollis-Arrington previously brought these same claims in a prior action, which was dismissed on the merits. And the only new party is Hollis-Arrington's daughter, who temporarily owned the property at issue and has precisely the same interests in the litigation as her mother.

IV. The district court did not abuse its discretion in denying plaintiffs' Rule 60(b) motion. To start, plaintiffs' request was untimely. A Rule 60(b) motion must be brought within a "reasonable time," and plaintiffs waited seven years to bring their motion. It was also without merit because the evidence they offered was not new and, in any event, would not have changed the outcome in this case.

## STANDARD OF REVIEW

This Court reviews *de novo* a district court's denial of a motion to remand for lack of removal jurisdiction. *See Infuturia Global Ltd. v. Sequus Pharm., Inc.*, 631 F.3d 1133, 1137 (9th Cir. 2011). This Court also reviews *de novo* the district court's dismissal based on res judicata. *See Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002).

This Court reviews for abuse of discretion a district court's denial of a Rule 60(b) motion. *See SEC v. Worthen*, 98 F.3d 480, 482 (9th Cir. 1996). This Court "may not reverse a district court's exercise of its discretion unless [it has] a definite and firm conviction that the district court committed a clear error of judgment in the conclusion it reached upon weighing the relevant factors." *SEC v.*

*Coldicutt*, 258 F.3d 939, 941 (9th Cir. 2001).  "A district court abuses its discretion if it does not apply the correct law or if it rests its decision on a clearly erroneous finding of material fact."  *Id.*

## ARGUMENT

## I.    THE DISTRICT COURT CORRECTLY HELD THAT THE "SUE AND BE SUED" PROVISION IN FANNIE MAE'S CHARTER CONFERS FEDERAL SUBJECT MATTER JURISDICTION

### A.    The Supreme Court's Decision In *American National Red Cross* Requires Federal Jurisdiction In This Case

1.  In *American National Red Cross v. S.G.*, 505 U.S. 247 (1992), the Supreme Court recognized the long-standing rule that governs this case:  where a "sue and be sued" provision in a federal charter explicitly mentions federal courts, that provision establishes independent subject matter jurisdiction in the federal courts.  Applying that rule, the D.C. Circuit Court of Appeals held that the exact charter provision at issue here—the provision authorizing Fannie Mae "to sue and be sued, and to complain and defend, in any court of competent jurisdiction, State or Federal"—confers federal subject matter jurisdiction, thus making removal appropriate.  *Pirelli*, 534 F.3d at 784.  The same result should follow here.

*American National Red Cross* involved a provision in the American Red Cross's charter authorizing it "to sue and be sued in courts of law and equity, State or Federal, within the jurisdiction of the United States."  505 U.S. at 248 (quotations and citation omitted).  The question was whether that provision

19

"confer[red] original jurisdiction on federal courts over all cases to which the Red Cross is a party, with the consequence that the organization is thereby authorized to remove from state to federal court any state-law action it is defending." *Id.* The Supreme Court noted that it did "not face a clean slate" in considering the question. *Id.* at 252. Rather, since the Republic's early days, the Court had on "several occasions . . . consider[ed] whether the 'sue and be sued' provision of a particular federal corporate charter conferred original federal jurisdiction over cases to which that corporation was a party." *Id.* And the critical question in those early cases, the Court emphasized, was whether the "sue and be sued" provision specifically mentioned the federal courts; where it did, the Court held that the provision conferred federal subject matter jurisdiction. *Id.*

The first case in this line was *Bank of United States v. Deveaux*, 9 U.S. (5 Cranch) 61 (1809), which held that a provision authorizing the first Bank of the United States "to sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in courts of record, or any place whatsoever" did *not* confer independent federal court jurisdiction. This generally stated power to sue and be sued, the Court explained, "is conferred by every incorporating act, and is not understood to enlarge the jurisdiction of any particular court." *Id.* at 85-86. By way of contrast, the Court pointed to a different provision, which subjected the president and directors in their individual capacity to suit and "expressly

20

authorize[d] the bringing of that action *in the federal or state courts*." *Id.* at 86 (emphasis added).  That difference reflected Congress's intention that a generic right to sue "does not imply a right to sue in the courts of the union, unless it be expressed." *Id.*

In *Osborn v. President, Directors & Co. of Bank*, 22 U.S. (9 Wheat.) 738 (1824), the Court highlighted the same distinction in considering the charter of the second Bank of the United States.  The second Bank was authorized to "sue and be sued, plead and be impleaded, answer and be answered, defend and be defended, in all State Courts having competent jurisdiction, *and in any Circuit Court of the United States*." *Id.* at 817 (emphasis added).  By its reference to suit "'in every Circuit Court of the United States,'" the provision "confer[red] jurisdiction on the Circuit Courts of the United States." *Id.* at 818.  Reiterating the contrast drawn in *Deveaux*, the Court observed that the first Bank's charter provision, which merely created "a general capacity in the Bank to sue, without mentioning the Courts of the Union," did not suffice to "give a right to sue in those Courts." *Id.*

*Deveaux* and *Osborn* together establish "the basic rule" that "a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if, but only if, it *specifically mentions the federal courts*." *Am. Nat'l Red Cross*, 505 U.S. at 255 (emphasis added); *see id.* at 257 ("The rule established in these cases makes it clear that the Red Cross Charter's 'sue and be sued'

21

provision should be read to confer jurisdiction.").  Under this "basic rule," the

Court explained in *American National Red Cross*, a provision that "authoriz[es] the

organization to sue and be sued in federal courts" is a provision that "extends

beyond a mere grant of general corporate capacity to sue," and for that reason

"suffices to confer federal jurisdiction."  *Id.* at 257.

2.  Plaintiffs make two arguments that *American National Red Cross* does

not compel the same result here.  Neither has merit.

First, they argue that *American National Red Cross* merely permits, but does

not mandate, that Fannie Mae be allowed to remove where the charter provision

explicitly references federal courts.  They point specifically to "'*Red Cross*'s use of

the word 'may,'" which they argue "is generally 'employed to imply permissive,

optional or discretional, and not mandatory action.'"  Pls. Br. 20 (quoting *Pirelli*,

534 F.3d at 796).  But elsewhere in the opinion, *American National Red Cross*

makes clear that express reference to the federal courts in a "sue and be sued"

provision mandates that the federal entity be permitted to remove:  "The rule

established in these cases makes it clear that the Red Cross Charter's 'sue and be

sued provision' *should be read* to confer jurisdiction."  505 U.S. at 257 (emphasis

added); *cf.* Br. for United States as Amicus Curiae Supporting Pet'rs, *Am. Nat'l

Red Cross v. S.G.*, 1992 U.S. S. Ct. Briefs LEXIS 115, at *5-6 ("This Court's

decisions have established *a clear rule* that congressional charters provide for

original jurisdiction in the federal courts whenever they specifically grant a right to sue and be sued in federal courts." (emphasis added)).  As the Court explained, it was important to respect this rule because Congress relied on it in enacting charters for federal entities like the Red Cross.  *See Am. Nat'l Red Cross*, 505 U.S. at 264 ("We would be loath to repudiate such a longstanding and settled rule, on which Congress has surely been entitled to rely . . . ."); *see also Bankers Trust Co. v. Tex. & Pac. Ry. Co.*, 241 U.S. 295, 304 (1916) (holding that a provision authorizing the Texas and Pacific Railway Company to "sue and be sued, plead and be impleaded, defend and be defended, in all courts of law and equity within the United States" did not confer federal subject matter jurisdiction because "[i]t was in the light of [the differing precedents in the first and second Bank charters] and of the resulting difference in their interpretation that Congress framed the act [chartering the railway company]").

Second, plaintiffs argue that Fannie Mae's charter provision differs meaningfully because of its reference to suit in "any court *of competent jurisdiction*."  Pls. Br. 20 (emphasis added).  According to plaintiffs, the phrase "of competent jurisdiction" effectively drains the explicit reference to "federal" courts of the import ascribed to such references in *Osborn* and *American National Red Cross*, because it must be read to permit suit in federal court only if the court *otherwise* has "competent" subject-matter jurisdiction.

23

Plaintiffs grossly overread the phrase. The Supreme Court has previously held that statutory provisions authorizing suit in "any Federal or State court of competent jurisdiction" suffice, without more, to authorize suit in federal district courts. In *Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691 (2003), for example, the Court held that an individual could sue his former employer in federal court for violations of the Fair Labor Standards Act because the statute provided that suit under the Act "'may be maintained . . . in any Federal or State court of competent jurisdiction.'" *Id.* at 694; *see Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73-74 (2000). And as the D.C. Circuit explained in *Pirelli*, the phrase "of competent jurisdiction" in the Fannie Mae charter, in particular, serves multiple functions that have nothing to do with restricting the scope of federal jurisdiction over suits by and against Fannie Mae. *Pirelli*, 534 F.3d at 785.

To start, the phrase "help[s] clarify that . . . litigants in state courts of limited jurisdiction must satisfy the appropriate jurisdictional requirements." *Id.* at 785; *see Osborn*, 22 U.S. at 817 (addressing statute that conferred authority on the Bank of the United States to "sue and be sued . . . in all State Courts having competent jurisdiction"). It also makes clear that "litigants, whether in federal or state court, must establish that court's *personal* jurisdiction over the parties." *Pirelli*, 534 F.3d at 785 (emphasis added). Indeed, the term "competent jurisdiction" is commonly used in law to refer to personal jurisdiction. *See*, *e.g.*, *Blackmar v. Guerre*, 342

24

U.S. 512, 516 (1952) ("If the Commission's action is reviewable under § 1009, it is reviewable only in a court of 'competent jurisdiction.' . . . [I]t must follow that review must be in that district where the Commissioners can be served." (internal footnote omitted)); *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1178-79 (9th Cir. 2004) ("the question of a federal court's competence to exercise personal jurisdiction over a defendant is distinct from the question of whether venue is proper"); *SunCoke Energy Inc. v. MAN Ferrostaal Aktiengesellschaft*, 563 F.3d 211, 213 (6th Cir. 2009) ("the parties have treated the contract forum-selection clause for equitable relief—calling for adjudication in 'any court of competent jurisdiction'—to mean any court with personal jurisdiction"); *Drake v. Whaley*, 355 F. App'x 315, 317 (11th Cir. 2009) ("because it lacked personal jurisdiction over the Defendants, the District Court for the Eastern District of New York was not a competent court of jurisdiction").[5]

---

[5] Plaintiffs thus err in arguing—following Judge Brown's concurrence in *Pirelli*—that "the phrase 'competent jurisdiction' almost always refers to subject-matter jurisdiction." Pls. Br. 12 (citing *Wachovia Bank, N.A. v. Schmidt*, 546 U.S. 303, 316 (2006), and *United States v. Morton*, 467 U.S. 822, 828 (1984)); *see Pirelli*, 534 F.3d at 797 (Brown, J., concurring) (citing *Morton*, 467 U.S. at 828, for the proposition that "'[a]s far back as *Pennoyer v. Neff*, . . . , [courts] drew a clear distinction between a court's "competence" and its jurisdiction over the parties'"). Not only is the argument contrary to the cases cited in text, it is also unsupported by the cases cited by plaintiffs. In *Wachovia Bank*, for example, the Court simply noted that "[s]ubject-matter jurisdiction . . . concerns a court's competence to adjudicate a particular category of cases." 546 U.S. at 316. And, in *Pennoyer v. Neff*, 95 U.S. 714 (1878), the Court merely stated that "there must be a tribunal competent by its constitution . . . to pass upon the subject-matter of the

The phrase also establishes that "litigants relying on the 'sue-and-be-sued' provision can sue in federal district courts but not necessarily in all federal courts." *Pirelli*, 534 F.3d at 785. Thus, a litigant may not appear in a federal court that otherwise imposes additional jurisdictional requirements, such as the Court of International Trade or the Court of Claims. *Cf. Am. Nat'l Red Cross*, 505 U.S. at 267 (Scalia, J., dissenting) (explaining that under the majority's view Red Cross "could appear . . . as a party in a third-party action in the Court of International Trade and in an action before the United States Claims Court" because it "is clearly granted the *capacity* to sue and be sued in *all* federal courts" (internal citations omitted)). With respect to the Court of Claims, in particular, the "of competent jurisdiction" language also ensures that claims exceeding $10,000 are not *required* to be heard in the Court of Claims. *Compare S. Windsor Convalescent Home, Inc. v. Mathews*, 541 F.2d 910, 914 (2d Cir. 1976) ("Since the claim involved in this case is directed against the United States, seeks solely a money judgment, and exceeds the threshold sum of $10,000, jurisdiction lies exclusively with the Court of Claims."), *with Ferguson v. Union Nat'l Bank*, 126 F.2d 753, 756 (4th Cir. 1942) (interpreting a "sue-and-be-sued" provision with the "of competent jurisdiction" language and concluding that "[i]t could hardly have

suit." *Id.* at 733. In fact, in *Morton*, although the Court recognized that "competent jurisdiction," "usually . . . refer[s] to subject-matter jurisdiction," the Court noted that it "has also been used on occasion to refer to a court's jurisdiction over the defendant's person." 467 U.S. at 828.

26

been intended by Congress that suits for over $10,000 against the Administrator could be brought in any state court of general jurisdiction, but in the federal jurisdiction only in the Court of Claims"); *Portsmouth Redevelopment & Hous. Auth. v. Pierce*, 706 F.2d 471, 475 (4th Cir. 1983) (reaffirming *Ferguson*).[6]

Moreover, when the Supreme Court decided *American National Red Cross*, it was well aware that its decision would have implications for other "sue and be sued" provisions like Fannie Mae's.  In its brief, the Red Cross noted that "entities besides the Red Cross will be affected by this Court's choice among the proposed modes of analysis" and cited provisions containing the "of competent jurisdiction" language.  Br. for Pet'r, *Am. Nat'l Red Cross v. S.G.*, 1992 U.S. S. Ct. Briefs LEXIS 220, at *48.  Specifically, it noted that the Solicitor General had "advised [the Supreme] Court" that similar language in another federal charter conferred federal subject matter jurisdiction:  'Plainly, Section 1702 [of the National Housing

---

[6] Indeed, this explanation makes sense of the difference between Fannie Mae's charter and that of its sibling, Freddie Mac, which omits the "of competent jurisdiction" language.  In her concurrence in *Pirelli*, Judge Brown argued that this difference supported her view that that the language was added to Fannie Mae's charter to remove federal subject matter jurisdiction.  534 F.3d at 799 (Brown, J., concurring).  But concerns that claims involving Fannie Mae might otherwise have been forced into the Court of Claims explains this difference:  Freddie Mac was "originally created as a private entity" and thus "Congress likely would not have been concerned that, absent the 'of competent jurisdiction' language, Freddie Mac cases could be funneled only to the Court of Claims rather than to federal district courts, which was a potential concern in 1954 when Congress revised the Fannie Mae statute for that then-governmental entity."  *Id.* at 787 n.4.

Act], by authorizing suit "in any court of competent jurisdiction, State or Federal," provides a basis for district court jurisdiction . . .'" *Id.*

There is, in sum, no legally meaningful distinction between the "sue or be sued" provision in *American National Red Cross* and the provision at issue here. What matters is that both make an express reference to suits in federal court. Under the longstanding rule running from *Deveaux* and *Osborn* through to *American National Red Cross* and *Pirelli*, that reference suffices to establish federal jurisdiction, and hence authorize removal.

### B. The History Of Fannie Mae's Charter Makes Clear That Congress Intended To Authorize Federal Subject Matter Jurisdiction Over Claims Against Fannie Mae

The history of the Fannie Mae charter provision confirms Congress's intent, already expressed in its plain language, to create federal subject matter jurisdiction over suits by and against Fannie Mae.

Under the original 1934 statute, Fannie Mae was a governmental entity tasked with effectuating important federal policies, and Congress thus wanted to ensure it would have access to the federal courts. Toward that end, Congress provided that Fannie Mae could "sue and be sued, complain and defend, in any court of law or equity, State or Federal." Pub. L. No. 73-479, § 301(c)(3), 48 Stat. 1246, 1253 (1934). As discussed above, Congress at that time would have

28

understood this language to unambiguously confer federal subject matter jurisdiction. *See supra* at 19-22.

Twenty years later, with the enactment of the Housing Act of 1954, Congress revamped the original statute. Among other things, Congress added the phrase "of competent jurisdiction" to the sue-and-be-sued clause. Pub. L. No. 83-560, tit. II, 68 Stat. 590, 612-22 (1954). The theory, then, is that Congress sought by this amendment to revoke the federal court jurisdiction that previously existed. Yet there is no indication that Congress was troubled by the scope of existing jurisdiction, and there is no reason to think that it would have been. Indeed, although Fannie Mae was converted to a "mixed-ownership corporation" at that time, it continued to enjoy a special relationship with the federal government, and its fundamental objective remained to fulfill federal policy goals. More significant, even if Congress were troubled by the scope of existing jurisdiction, there is no reason Congress would have understood the language it added to have restricted that jurisdiction. To the contrary, when Congress acted in 1954, courts of appeals had recently examined "sue-and-be-sued" provisions with the exact same "of competent jurisdiction" language and concluded that they conferred federal subject matter jurisdiction. *See Seven Oaks, Inc. v. Fed. Hous. Admin.*, 171 F.2d 947, 948 (4th Cir. 1948) ("[The statute] provides not only that the agency may be sued but also in what courts suit may be instituted. The exact language of the

statute is: 'The Administrator shall, in carrying out the provisions of this title and titles II and III, be authorized, in his official capacity, to sue and be sued in any court of competent jurisdiction, State or Federal.' There is no more ambiguity in the language used and no more reason to restrict its meaning than there was the meaning of the language permitting suit in any United States District Court in the Railway Labor Act." (internal citation omitted)); *Ferguson v. Union Nat'l Bank*, 126 F.2d at 756-57 ("We think there can be no question but that the court had jurisdiction of the cause. It is specifically provided that the Administrator in his official capacity may 'sue and be sued in any court of competent jurisdiction, State or Federal.'"); *see also George H. Evans & Co. v. United States*, 169 F.2d 500, 502 (3d Cir. 1948). Plaintiffs cite no court that had so much as suggested otherwise.

As the D.C. Circuit pointed out in *Pirelli*, it would have made no sense for Congress in 1954 to "negate automatic federal jurisdiction" by such an indirect device as the phrase "of competent jurisdiction." 534 F.3d at 786. "If Congress in 1954 did not want to continue to confer federal jurisdiction in Fannie Mae cases, it logically would have omitted the word 'Federal' from the statute, not attempted a bank shot by adding the words 'of competent jurisdiction.'" *Id.* Indeed, Congress did exactly that in the same year it added the "of competent jurisdiction" language to Fannie Mae's charter, deleting the word "Federal" from the "sue-and-be-sued" provision of the Federal Savings and Loan Insurance Corporation ("FSLIC")

30

statute.  Pub. L. No. 83-560, § 501(1), 68 Stat. 590, 633 (1954) (amending Pub. L. No. 73-479, § 402(c)(4), 48 Stat. 1246, 1256 (1934)).  "The fact that Congress chose to keep that all-important word in the Fannie Mae statute but to delete it from the FSLIC statute is compelling evidence that Fannie Mae's 'sue-and-be-sued' provision was meant to ensure continuing federal jurisdiction in Fannie Mae cases."  *Pirelli*, 534 F.3d at 787.

### C.  The Cases Cited By Plaintiffs Do Not Defeat Federal Jurisdiction In This Case

In the face of *American National Red Cross* and *Pirelli*, plaintiffs rely on cases addressing the "of competent jurisdiction" language in vastly different contexts.  Their principal authority is *Califano v. Sanders*, 430 U.S. 99 (1977), which has no application here.  In *Califano*, the Court considered whether § 10 of the APA granted the federal courts jurisdiction to consider challenges to agency action.  Section 10 of the APA provides that "[a] person suffering legal wrong because of agency action, or adversely affected or aggrieved by agency action within the meaning of a relevant statute, is entitled to judicial review thereof," and that "[t]he form of proceeding for judicial review is the special statutory review proceeding relevant to the subject matter in a court specified by statute or, in the absence or inadequacy thereof, any applicable form of legal action . . . in a court of competent jurisdiction."  5 U.S.C. §§ 702, 703.

The Court in *Califano* concluded that § 10 did not confer automatic federal subject matter jurisdiction, but there are obvious differences between this case and *Califano*. First, the phrase there did *not expressly refer to federal courts*. Under the *Deveaux-Osborn-Red Cross* rule, the provision would not create federal jurisdiction. But where, as here, the language does refer to federal courts, federal jurisdiction is established.

Second, as the *Califano* Court explained, the phrase "of competent jurisdiction" in APA § 10 is used in a provision that is not about *creating* judicial jurisdiction at all: "[E]ven the advocates of jurisdiction under the APA acknowledge that there is no basis for concluding that Congress, in enacting § 10 of the APA, actually conceived of the Act in jurisdictional terms." *Califano*, 430 U.S. at 106. The context of the provision "suggests that this language was not intended as an independent jurisdictional foundation, since such judicial review is to proceed 'in a court specified by statute' or 'in a court of competent jurisdiction.' Both of these clauses seem to look to outside sources of jurisdictional authority." *Id.* at 106 n.6. Here, by contrast, "sue or be sued" provisions like the Fannie Mae charter provision have long been construed as creating independent federal court jurisdiction. In other words, in *Califano*, the "of competent jurisdiction" language was attached to a statutory provision that was not intended to confer jurisdiction of any kind; here, it is.

Third, *Califano* did not involve a federally-charted corporation, like Fannie Mae. As this Court has already recognized, "[t]he Court's holding in *Red Cross* applies specifically to 'sue and be sued' provisions in charters for federally-chartered corporations." *K.V. Mart Co. v. United Food & Commercial Workers Int'l Union*, 173 F.3d 1221, 1224 (9th Cir. 1999) (per curiam). "Federally-chartered corporations . . . are entirely defined by federal law," *id.* at 1225, and it is thus especially important that they be able to access the federal courts.

Plaintiffs err equally in relying on *Doe v. Mann*, 415 F.3d 1038 (9th Cir. 2005). The provision in that case stated that "[a]ny Indian child who is the subject of any action for foster care placement or termination of parental rights under State law, any parent or Indian custodian for whose custody such child was removed, and the Indian child's tribe may petition any court of competent jurisdiction to invalidate such action." 25 U.S.C. § 1914. Relying heavily on *Califano*, this Court held that "§ 1914's reference to 'any court of competent jurisdiction' *alone* does not create subject-matter jurisdiction in the federal district court." *Doe*, 415 F.3d at 1045 (emphasis added). That is precisely the point: if Fannie Mae's charter provision merely authorized suit in "any court of competent jurisdiction," that reference "alone" would not suffice to create federal subject-matter jurisdiction under the *Deveaux-Osborn-Red Cross* rule. But Fannie Mae's charter

33

provision goes farther, specifically authorizing suit in federal courts, which does suffice under that rule. *Doe* says nothing at all about that kind of provision.[7]

Finally, plaintiffs rely on a series of district court cases that have addressed Fannie Mae's charter and similar language in the charter of the Federal Home Loan Bank. Pls. Br. 16-18. The analysis in these cases is simply unpersuasive. *Rincon del Sol v. Lloyd's of London*, 709 F. Supp. 2d 517 (S.D. Tex. 2010), and *Knuckles v. RBMG, Inc.*, 481 F. Supp. 2d 559 (S.D. W. Va. 2007), for example, both rely principally on the argument that interpreting the "sue and be sued" provision to confer independent federal subject matter jurisdiction would render the "of competent jurisdiction" language superfluous. *Rincon*, 709 F. Supp. 2d at 524; *Knuckles*, 481 F. Supp. 2d at 563. But, as explained above, interpreting Fannie Mae's charter to confer federal subject matter jurisdiction does not render the "of competent jurisdiction" language superfluous at all. *See supra* at 24-27.

---

[7] Plaintiffs also mention in passing older cases in which courts of appeals had held that 12 U.S.C. § 1702, which authorizes the Secretary of Housing & Urban Development "to sue and be sued in any court of competent jurisdiction, State or Federal," does not confer federal subject matter jurisdiction. *See* Pls. Br. 17 (citing *C.H. Sanders Co. v. BHAP Hous. Dev. Fund Co.*, 903 F.2d 114, 118 (2d Cir. 1990); *Indus. Indem., Inc. v. Landrieu*, 615 F.2d 644, 647 (5th Cir. 1980)); *Bor-Son Bldg. Corp. v. Heller*, 572 F.2d 174, 181 (8th Cir. 1978); *Lindy v. Lynn*, 501 F.2d 1367, 1369 (3d Cir. 1974)). Those cases all pre-date *American National Red Cross*, however, and do not even acknowledge the long line of earlier Supreme Court cases holding that "sue-and-be-sued" provisions that reference federal courts generally provide federal subject-matter jurisdiction.

These courts also took the curious position that Congress's decision "to use substantially different language" in amending Fannie Mae's charter seven years after adopting the Red Cross charter indicated that Congress intended different federal jurisdictional consequences. *Rincon*, 709 F. Supp. 2d at 525. But as explained, the language Congress used in the Fannie Mae amendment was not "substantially different" in any meaningful sense; it was instead identical to provisions federal appellate courts had recently construed as conferring federal subject matter jurisdiction. *See supra* at 29-30. As noted, if Congress had actually intended to restrict the jurisdiction already conferred by Fannie Mae's original "sue and be sued" provision, the "substantially different language" to use would have been to delete the reference to "State or federal" courts, thereby easily eliminating automatic federal subject matter jurisdiction under already-existing Supreme Court precedent. Trying to achieve that result by retaining the express reference to federal courts while adding the "of competent jurisdiction" phrase would be a ridiculous "bank shot" with exactly no support in precedent existing at the time. *Pirelli*, 534 F.3d at 786. The other district court cases on which plaintiffs rely (Pl. Br. 17-19) all involve the same flawed reasoning.

The text, history, and sound judicial constructions of the Fannie Mae charter provision all make clear that it creates federal jurisdiction over this action and therefore supports its removal.

35

## II.    THIS COURT SHOULD AFFIRM BECAUSE ITS PRIOR ORDER SUMMARILY AFFIRMING THE DISTRICT COURT'S DECISIONS IN THIS CASE IS "LAW OF THE CASE"

In this appeal, plaintiffs ask this Court to review the district court's order dismissing their claims and denying their Rule 60(b) motion.  Plaintiffs have previously asked this Court to review orders resolving the exact same issues, and this Court has already rejected plaintiffs' arguments on the merits.  This Court's prior order is "law of the case," and there is no reason for this Court to disturb its ruling now.

The "law of the case doctrine" is designed "to promote the efficient operation of the courts."  *Hall v. City of L.A.*, 697 F.3d 1059, 1067 (9th Cir. 2012).  "It generally precludes a court from reconsidering an issue decided previously [either explicitly or by necessary implication] by the same court or by a higher court in the identical case."  *Id.*  Thus, under the "law of the case" doctrine, "'one panel of an appellate court will not as a general rule reconsider questions which another panel has decided on a prior appeal in the same case.'"  *Hegler v. Borg*, 50 F.3d 1472, 1475 (9th Cir. 1995) (quoting *Merritt v. Mackey*, 932 F.2d 1317, 1320 (9th Cir. 1991)).  Although the doctrine is discretionary, this Court has observed that "a prior decision should be followed unless (1) the decision is clearly erroneous and its enforcement would work a manifest injustice, (2) intervening

controlling authority makes reconsideration appropriate, or (3) substantially different evidence was adduced at a subsequent trial." *Id.*

Law of the case doctrine plainly applies here. In 2003, plaintiffs appealed the district court's orders dismissing their claims against Cendant, Fannie Mae, and Mathews on res judicata grounds and denying their first Rule 60(b) motion. This Court "summarily affirm[ed] the district court's orders," concluding that "[a] review of the record and appellant's response indicates that the questions raised in this appeal are so insubstantial as not to require further argument." SER-8. Although this Court did not discuss the reasons for its decision, it necessarily held that the district court properly dismissed plaintiffs' claims on res judicata grounds, and that none of the "new" evidence in plaintiffs' Rule 60(b) motion (which they repeat here) merited a change in the result. These are the precise questions at issue in this appeal, and there is no reason for this Court to answer them differently now than it did nearly a decade ago.

## III.  THE DISTRICT COURT PROPERLY DISMISSED PLAINTIFFS' CLAIMS ON RES JUDICATA GROUNDS

This Court's prior order is not just law of the case, it is legally correct: plaintiffs' claims are barred by res judicata. Just as plaintiffs now seek to re-litigate issues previously litigated and decided, this entire suit was simply an attempt to re-litigate in state court claims that had already been litigated and rejected in federal court.

37

Res judicata "'bars litigation in a subsequent action of any claims that were raised or could have been raised in the prior action.'"  *Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708, 713 (9th Cir. 2001) (quoting *W. Radio Servs. Co. v. Glickman*, 123 F.3d 1189, 1192 (9th Cir. 1997)).  "The doctrine is applicable whenever there is '(1) an identity of claims, (2) a final judgment on the merits, and (3) identity or privity between parties.'"  *Id.*  As the district court held, all three criteria are satisfied here.

First, to determine whether there is an "identity of claims," this Court considers four factors: "(1) whether rights or interests established in the prior judgment would be destroyed or impaired by prosecution of the second action; (2) whether substantially the same evidence is presented in the two actions; (3) whether the two suits involve infringement of the same right; and (4) whether the two suits arise out of the same transactional nucleus of facts."  *Turtle Island Restoration Network v. U.S. Dep't of State*, 673 F.3d 914, 917-18 (9th Cir. 2012).  The "'most important'" of these factors is the fourth, *id.* at 918, and the inquiry is "essentially the same as whether the claim could have been brought in the first action."  *United States v. Liquidators of European Fed. Credit Bank*, 630 F.3d 1139, 1151 (9th Cir. 2011); *see Turtle Island*, 673 F.3d at 918 ("where claims arise from the same factual circumstances, a plaintiff must bring all related claims

together or forfeit the opportunity to bring any omitted claim in a subsequent proceeding").

Here, plaintiffs' claims not only *could* have been brought in the prior action, they *were* brought in that action. In this case, just as in the previous two, plaintiffs "challenge[d] Defendants' conduct in connection with the process of Arrington's loan application and the eventual foreclosure of residential property. . . . Plaintiffs' claims allege that the conduct of the defendants in processing the loan and the foreclosure sale were improper and invalid." OER 1:33 (DE 59, at 8); *see id.* (the "same rights and interests are at issue in the instant case as were adjudicated in the previous actions").[8] Thus, the "identity of claims" factors are readily satisfied: the two suits arise out of the same nucleus of facts and involve infringement of the same right, and defendants' interests in the finality of the prior litigation would be impaired by this action.

Second, there was a final judgment on the merits. Final judgment on the merits is "synonymous" with "'dismissal with prejudice.'" *Hells Canyon Pres. Council v. U.S. Forest Serv.*, 403 F.3d 683, 686 (9th Cir. 2005). And a "dismissal for failure to state a claim under Rule 12(b)(6) is a 'judgment on the merits' to

---

[8] Plaintiffs did allege new causes of action and added the additional factual allegation that Cendant "improperly substituted a trustee before the foreclosure sale" (OER 1:33 & nn.4-5 (DE 59, at 8 & nn.4-5)), but plaintiffs offer no reason to think that those additions meaningfully changed the complaint, or could not have been brought in the prior actions.

which res judicata applies." *Stewart v. U.S. Bancorp*, 297 F.3d 953, 957 (9th Cir. 2002). In the second action, the district court dismissed Hollis-Arrington's claims against all defendants as a matter of law or for failure to state a claim, and this Court affirmed the district court's decision. *See* SER-1 (entry of judgment); SER-2-6 (judgment and memorandum affirming district court). That dismissal is a judgment on the merits.

Third, there was identity or privity between the parties. "'Privity'—for purposes of applying the doctrine of res judicata—is a legal conclusion 'designating a person so identified in interest with a party to former litigation that he represents precisely the same right in respect to the subject matter involved.'" *United States v. Schimmels*, 127 F.3d 875, 881 (9th Cir. 1997). "[W]hen two parties are so closely aligned in interest that one is the virtual representative of the other, a claim by or against one will serve to bar the same claim by or against the other." *Irwin v. Mascott*, 370 F.3d 924, 929 (9th Cir. 2004) (quotation omitted).

Because Fannie Mae and Hollis-Arrington were parties to the prior proceedings, the only privity question is whether Crystal Lightfoot was in privity with Hollis-Arrington. She was: she is Hollis-Arrington's daughter, resided in the home that is the subject of this dispute, was temporarily the owner of the property, and her interests in the litigation are precisely the same as her mother's. That relationship easily suffices to establish privity. *See Trevino v. Gates*, 99 F.3d 911,

40

924 (9th Cir. 1996) (privity existed between woman and her grandmother where the "interests of [the woman] and her grandmother are so similar that [the woman's] grandmother virtually represented [her] in [the prior action]").

Because all three elements of res judicata exist here, the district court properly dismissed plaintiffs' claims on res judicata grounds, as this Court previously recognized.

## IV.    THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN DENYING PLAINTIFFS' RULE 60(b) MOTION

This Court should also affirm the district court's denial of plaintiffs' Rule 60(b) motion because it is yet another attempt to re-litigate issues that have already been litigated and decided multiple times over.  Under Federal Rule of Civil Procedure 60(b), "the court may relieve a party or its legal representative from a final judgment, order, or proceeding" where, under Rule 60(b)(2), there is "newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial" or, under Rule 60(b)(3), there is "fraud . . . misrepresentation, or misconduct by an opposing party."  Fed. R. Civ. P. 60(b)(2), (3).  "A motion under Rule 60(b) must be made within a reasonable time—and for reasons (1), (2), and (3) no more than a year after the entry of the judgment or order of the date of the proceeding."  *Id.* R. 60(c)(1).  District courts "lack[] discretion to bend the one-year limit."  *McKnight v. Neven*, 366 F. App'x 841, 843 (9th Cir. 2010); *see Warren v. Garvin*, 219 F.3d 111, 114 (2d Cir. 2000)

41

("[t]he limitations period [in Rule 60] is 'absolute'" (quoting 12 James Wm. Moore et al., Moore's Federal Practice § 60.65[2][a], at 60-200 (3d ed. 1997)).

To prevail under Rule 60(b)(2), the moving party must show that the "newly discovered" evidence was not in its "possession at the time of trial" and could not have been "discovered with reasonable diligence," and that the "newly discovered" evidence would likely have changed the outcome of the case. *Coastal Transfer Co. v. Toyota Motor Sales, U.S.A.*, 833 F.2d 208, 212 (9th Cir. 1987). To prevail under Rule 60(b)(3), the moving party must "'prove by clear and convincing evidence that the verdict was obtained through fraud, misrepresentation, or other misconduct and the conduct complained of prevented the losing party from fully and fairly presenting the defense.'" *Casey v. Albertson's Inc.*, 362 F.3d 1254, 1260 (9th Cir. 2004) (quoting *De Saracho v. Custom Food Mach., Inc.*, 206 F.3d 874, 880 (9th Cir. 2000)). The fraud must "not be discoverable by due diligence before or during the proceeding" and must be "materially related to the submitted issue." *Pac. & Arctic Ry. & Navigation Co. v. United Transp. Union*, 952 F.2d 1144, 1148 (9th Cir. 1991).

Here, plaintiffs' request for Rule 60 relief fails both because it is untimely and because plaintiffs have failed to satisfy the requirements of either Rule 60(b)(2) or (3).

## A.    The District Court Properly Held That Plaintiffs' Rule 60(b) Motion Was Untimely

As noted above, a motion under either Rule 60(b)(2) or (3) must be made within a "reasonable time" and, in any event, no later than "a year after the entry of the judgment or order of the date of the proceeding." Fed. R. Civ. P. 60(c). "'What constitutes 'reasonable time' depends upon the facts of each case, taking into consideration the interest in finality, the reason for delay, the practical ability of the litigant to learn earlier of the grounds relied upon, and prejudice to the other parties.'" *Lemoge v. United States*, 587 F.3d 1188, 1196-97 (9th Cir. 2009) (quotation omitted).

Here, the district court granted Fannie Mae's motion to dismiss on February 20, 2003. Plaintiffs did not file this motion until June 11, 2010—over seven years later. That delay was unreasonable, to say the least. As the district court noted, plaintiffs could have filed many years earlier because "the documents are public records and Plaintiffs presented the same facts to the Court more than seven years ago." OER 1:94 (DE 117, at 8). Moreover, given that this Court already affirmed the district court's motion to dismiss, defendants had every reason to rely on the finality of that decision. Plaintiffs have offered no reason to disrupt that finality now. Indeed, plaintiffs' only argument on appeal was that the Rule 60(b) motion was filed within one year of judgment. Pls. Original Br. 17 ("Adjudication of Attorneys Equity (for the purpose of a rule 60(b) motion) was not complete until

43

6/11/2010.  It was that judgment which was tantamount to final adjudication of this case.  Appellants rule 60(b) motion was filed on 9/17/2010, well within the one year time frame to consider the motion as timely.").  But even if that were right,[9] it provides no excuse for plaintiffs' failure to file within a reasonable time.  "The one-year period represents an extreme limit, and the motion will be rejected as untimely if not made within a 'reasonable time' even though the one-year period has not expired."  Federal Practice & Procedure § 2866.  Plaintiffs' motion was exceedingly untimely, and that is alone sufficient basis to affirm the district court's decision.

---

[9] The district court held that it was not right and that it "lack[ed] jurisdiction" to consider the motion "due to the expiration of the one-year time period."  OER 1:93 (DE 117, at 7).  As the court explained, "[b]ecause the parties treated the order of dismissal as a judgment, the Court finds that, for purposes of Rule 60(b)(3), judgment was entered as to these defendants on July 21, 2003, which was 150 days from the date of entry of the February 20, 2003 order of dismissal.  Therefore, Plaintiffs should have sought relief for alleged fraud committed by Defendants in procuring the dismissal of the action by July 21, 2004, which was one year from the date on which the judgment would have been entered pursuant to Federal Rule of Civil Procedure 58."  *Id.* (internal citation omitted).  This Court need not decide whether plaintiffs' motion was filed outside the one-year time period because either way, the delay was completely unreasonable.  *Amoco Overseas Oil Co. v. Compagnie Nationale Algerienne de Navigation ("C.N.A.N.")*, 605 F.2d 648, 656 (2d Cir. 1979) ("Although Judge Tenney was incorrect in his determination that the Rule 60(b)(1) motion was filed over a year after judgment, his ultimate holding that the motion was untimely can be founded upon the alternative requirement that motions under the Rule be made within 'a reasonable time.'").

### B.    The District Court Did Not Abuse Its Discretion When It Denied Plaintiffs' Rule 60(b) Motion

As noted above, to satisfy the requirements of Rule 60(b), the moving party must present new evidence that could not have been discovered prior to the entry of judgment and that would likely change the outcome of the case. Here, plaintiffs failed to make that showing. Indeed, as the district court explained, plaintiffs previously filed a motion to set aside the judgment based on the same evidence identified in this motion. OER 1:94 (DE 117, at 8). Even at that time, the district court concluded that the evidence on which plaintiffs relied "could have been discovered through the exercise of diligence prior to the entry of judgment." *Id.* at 50 (DE 79, at 50). "The documents are public recordations available to members of the public that seek their production. Additionally, plaintiffs' own submission of the documents as printouts from Lexis-Nexis indicate that, prior to entry of judgment in this proceeding, plaintiff could have obtained copies of these documents." *Id.* In fact, according to the district court, plaintiff "had this information since the filing of [the] case." *Id.* at 50 n.1 (DE 79, at 50 n.1).

The district court also held that "production of the alleged new evidence would not have changed the outcome of the case." *Id.* at 94 (DE 117, at 8); *see id.* at 50-51 (DE 79, at 50-51) ("the Court finds that production of these documents would not have changed the Court's finding that defendants were entitled to dismissal of plaintiff's claims in this action"). Indeed, plaintiffs do not

45

meaningfully argue otherwise in either their original brief or their supplemental brief. *See, e.g.*, *Martinez-Serrano v. INS*, 94 F.3d 1256, 1259 (9th Cir. 1996) ("Issues raised in a brief that are not supported by argument are deemed abandoned.").

This Court affirmed the district court's denial of plaintiffs' first Rule 60(b) motion nearly ten years ago. SER-7-8. It should affirm the denial of this one now.

## CONCLUSION

For the foregoing reasons, the judgment should be affirmed.

Respectfully submitted,

/s/ Jonathan D. Hacker

JONATHAN D. HACKER
MICHAEL WALSH
O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
(202) 383-5300
(202) 383-5414 (fax)

JAN T. CHILTON
SEVERSON & WERSON
One Embarcadero Center
26th Floor
San Francisco, CA 94111
(415) 398-3344
(415) 956-0439 (fax)

*Attorneys for Defendant-Appellee Fannie Mae*

## STATEMENT OF RELATED CASES

Pursuant to Circuit Rule 28-2.6, defendant Federal National Mortgage Association states that it is aware of the following related cases that are now pending or were pending in this Court, in addition to those previously identified by plaintiffs:

1. *Hollis-Arrington v. Cendant Mortg.*, No. 02-56279 (same transactions)

2. *Hollis-Arrington v. Cendant Mortg.*, No. 02-56280 (same transactions)

3. *Lightfoot v. U.S. District Court for Central California*, No. 09-74079 (same district court case)

4. *Hollis-Arrington v. Cendant Mortg.*, No. 10-56651 (same transactions)


Dated:  February 4, 2013


　/s/ Jonathan D. Hacker
Jonathan D. Hacker

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 11,336 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  I further certify that this brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in Times New Roman size 14-point font.

Dated:  February 4, 2013

/s/ Jonathan D. Hacker
Jonathan D. Hacker

## CERTIFICATE OF SERVICE

I hereby certify that on February 4, 2013, I electronically filed the foregoing with the Clerk of the Court for the U.S. Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.  All participants are registered CM/ECF users, and will be served by the appellate CM/ECF system.

Dated:  February 4, 2013

/s/ Jonathan D. Hacker
Jonathan D. Hacker